UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

Walter F. Buchl,

    Plaintiff,

v.

Michael J. Astrue, Commissioner
of Social Security Administration,

    Defendant.

_____

Civil No. 06-cv-3108 (ADM/JJG)

**REPORT AND RECOMMENDATION**

This is Plaintiff Walter F. Buchl's ("Buchl") action for review of Defendant Commissioner of Social Security's denial of his application for disability insurance benefits. It is before the Court on the parties' cross-motions for summary judgment. *See* Doc. Nos. 30, 32. The motions are referred to this Court for a Report and Recommendation in accordance with 28 U.S.C. § 636 and D. Minn. LR 72.1.

For the reasons set forth below, the Court recommends denial of both summary judgment motions and remand to the Commissioner for further proceedings in accordance with this Report and Recommendation.

**I.    BACKGROUND**

    **A.    General**

Buchl is 63 years old. He has rheumatoid arthritis. He first applied for disability insurance benefits in July 2003, alleging that he became disabled as of October 1, 2002. Tr. at 249, 52-54.[1]

---

[1] The Court references the administrative transcript in this matter as "Tr.___."

Buchl last worked as a project manager for a commercial lighting company specializing in highway and street lighting. Tr. at 255. His job duties included preparing cost estimates for jobs, overseeing warehouse deliveries, and purchasing. *Id.* at 89, 256. He also managed electrical jobs in progress, including sometimes crouching and climbing, as well as handling big objects. *Id.* at 89, 273-275. His past work sometimes required that he lift 100 pounds or more, *id.* at 89, 275, and frequently entailed that he lift 25 pounds or more. *Id.* Buchl last worked in October 2001. *Id.* at 75.

Buchl testified that his rheumatoid arthritis precludes him from full-time work. *Id.* at 256. He explained that in the mornings he swims to loosen up, and that, after that, he could work for two to three hours. *Id.* at 257. He then requires a resting period of thirty to forty five minutes. He can then be productive again for a half hour, before he needs another rest. *Id.* His hands and feet hurt most of the time. *Id.* His shoulders and hips are painful, too, but not as bad as his hands and feet. *Id.*

Buchl watches his two grandchildren, one at a time, three or four days a week. *Id.* at 258. He feeds, changes, and naps with them. *Id.* at 267. He also does woodworking for one hour or ninety minute stints. *Id.* at 259, 262. He ushers at church every fourth Sunday, but sits down after about fifteen minutes. *Id.* at 263, 266.

Buchl's sleep is disrupted due to his arthritis. He sleeps approximately two hours at a time, and then gets up to walk and stretch. *Id.* at 261-262. He is up three to four times a night. *Id.* at 262. He testified that he feels exhausted, and takes three naps a day. *Id.*

2

B.    **Treatment with Dr. Ridley**

Buchl has treated his rheumatoid arthritis with Dr. Ridley, a rheumatologist, since at least 2001. *Id.* at 127. Between 2001 and 2006, Buchl saw Dr. Ridley at least fifty times, and also saw other rheumatologists practicing with Dr. Ridley on numerous occasions.

Dr. Ridley's treatment notes reflect that, in 2001, Buchl was taking Methotrexate and Arava to treat his rheumatoid arthritis. *E.g., id.* at 196. This medication regimen did not sufficiently control the disease, so Dr. Ridley prescribed Remicade, in addition to Methotrexate, in January 2002. *Id.* at 195. After approximately six months, and an increase in the dosage of his Remicade, Dr. Ridley noted on September 22, 2002, "good control" of Buchl's rheumatoid arthritis. *Id.* at 187.

This improvement lasted until approximately the next summer, when Buchl again began experiencing flares of his arthritis. *E.g.*, *id.* at 178, 180, 218. From the summer of 2003 to the summer of 2005, Dr. Ridley's notes reflect that Buchl's medication regime helped him, but that he had frequent episodes of joint tenderness and arthritic flares. *E.g.*, *id.* at 205, 207, 215, 218. He tended to have the most difficulty in the week or two prior to his next dose of Remicade. *E.g.*, *id.* at 212.

In July 2005, Buchl began experiencing more tenderness and synovitis, and his Remicade was again increased. *Id.* at 397-398. Buchl's arthritis gradually worsened over 2005 and 2006. *Id.* at 383-394.

In 2006, Dr. Ridley concluded that Remicade was no longer effective for Buchl, and tried different medications, including Humira and Orencia. *Id.* at 385, 386. He noted that Buchl continued to experience problems. *Id.* at 343.

Dr. Ridley opined twice, on May 11 and December 7, 2005, that Buchl's rheumatoid arthritis precluded him from full-time work. *Id.* at 243, 244.

**C.    Procedural**

Buchl's disability benefits application was denied on September 9, 2003, and again upon reconsideration on November 20, 2003. *Id.* at 23-27, 37-38. Buchl requested a hearing before an ALJ, which occurred on May 11, 2005, in Minneapolis, Minnesota. On September 23, 2005, the ALJ denied Buchl's application for disability benefits. *Id.* at 20. The ALJ found that Buchl had the severe impairments of rheumatoid arthritis and obesity, but that Buchl was able to perform his past relevant work as a sales representative. *Id.* at 17, 19.[2]

Buchl appealed the ALJ's decision to the Appeals Council, which denied his request for review on May 25, 2006. *Id.* at 5-11.

Buchl filed his Complaint in this matter on July 26, 2006. The next month, on August 22, 2006, he filed a second application for Social Security disability benefits. *Id.* at 284.

On January 30, 2007, the parties stipulated to remand this case to the Commissioner for further administrative proceedings based on material new evidence. *See* 42 U.S.C. § 405(g). Specifically, on November 29, 2006, the Social Security Administration granted Buchl's second application for disability benefits. Tr. at 284. It determined that Buchl became disabled due to his rheumatoid arthritis commencing October 14, 2005, less than a month after the ALJ's denial of Buchl's first application for benefits. *Id.* Accordingly, on January 31, 2007, the District Court remanded this case to the Commissioner. *See* Doc. No. 20.

---

[2] The ALJ determined that Buchl retained the residual functional capacity ("RFC") to "lift and carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk 4 hours of an 8 hour day, sit 6 hours of an 8 hour day, limited to occasional climbing of stairs and ramps, kneeling, crouching, crawling, and bending, no climbing of ladders, ropes, and scaffolds, no work at heights, and no firm gripping and grasping." Tr. at 18.

On remand, the Appeals Council affirmed the ALJ's September 23, 2005, decision denying Buchl's first benefits application. Tr. at 400-401. The Appeals Council reasoned that the record evidenced that Buchl's condition worsened as of mid-October, supporting the commencement of benefits at that time, but not before. *Id.*

Upon the Commissioner's request, the District Court reopened the case by Order dated November 14, 2007. *See* Doc. No. 26. As stated, it is now before the Court on cross-motions for summary judgment.

Given the Commissioner's grant of Buchl's second application for disability benefits, the question before the Court is whether the ALJ's denial of Buchl's first application for benefits was supported by substantial evidence. Specifically, the benefits period at issue is the approximate three year period between October 1, 2002, the disability onset date Buchl alleged in his first application, and October 14, 2005, the date the Commissioner determined Buchl's disability began in granting his second application.

## II. LEGAL STANDARD

When reviewing the findings of the ALJ, the Court considers whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003). Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). The Court must consider evidence that both favors and detracts from the decision. *Kelley v. Callahan*, 133 F.3d 583, 587 (8th Cir. 1998).

## III. ANALYSIS

Buchl argues that, in arriving at his RFC, the ALJ improperly discounted the opinion of his treating rheumatologist, Dr. Ridley. He further argues that the ALJ inappropriately relied

instead on the testifying medical expert, Dr. Martinson. The Commissioner argues that substantial evidence in the record supported the ALJ's RFC determination, including his conclusion that Dr. Ridley's opinion was not entitled to controlling weight.

### A. Dr. Ridley's Opinion

#### 1. **New Evidence**

Dr. Ridley rendered two opinions regarding Buchl's ability to work full-time. The first was made the same day as the benefits hearing, May 11, 2005.[3] Tr. at 243. The ALJ held the record open to receive this opinion, and expressly considered it. *Id.* at 280. In this opinion, Dr. Ridley stated, "He [Buchl] notices some tenderness before his next infusion. He is not capable of working the full 40-hour workweek at any point in time at this movement, and I believe he is medically disabled…. He is stable medically but not capable for full-time work." *Id.* at 243.

Buchl subsequently appealed the ALJ's decision denying him benefits to the Appeals Council. In connection with that appeal, he submitted another opinion from Dr. Ridley regarding his work limitations. In this opinion, dated December 7, 2005, Dr. Ridley stated:

> Mr. Buchl has significant rheumatoid arthritis. He should be able to get Social Security benefits for his arthritis. He is partially controlled on significant medication plus IV medication and at present can probably only work 2-3 hours a day due to fatigue and active arthritis. If he tries to work more, his arthritis will inflame. He is not capable of working full time at this point and is unlikely to be able to work full time at any point in the future. If you have any further questions, please call.

Tr. at 244. The Appeals Council considered Dr. Ridley's December 7, 2005, opinion, along with the rest of the record, but denied Buchl's request for review. *Id.* at 5, 8.

---

[3] Buchl states that this opinion is incorrectly dated May 11, 2004, rather than May 11, 2005. The Commissioner does not contest this. The Court, therefore, uses the May 11, 2005, date for Dr. Ridley's first opinion.

Where a claimant presents additional evidence to the Appeals Council not considered by the ALJ, and the Appeals Council considers it, the Court determines "whether the administrative law judge's determination is supported by substantial evidence on the record as a whole, including the new evidence submitted after the determination was made." *Riley v. Shalala*, 18 F.3d 619, 622 (8th Cir. 1994); *Richmond v. Shalala*, 23 F.3d 1441, 1443 (8th Cir. 1994) (same). Accordingly, the Court considers both of Dr. Ridley's opinions regarding Buchl's work limitations in determining whether substantial evidence supports the ALJ's decision.[4]

### 2. **Weighing of medical opinions**

The ALJ's decision not to afford controlling weight to Dr. Ridley's May 11, 2005, opinion was based, in part, on his view that the opinion was conclusory. As the ALJ stated, "Dr. Ridley did not report any reasoning for the claimant's inability to work a 40-hour week…." Tr. at 19. Even if this accurately characterized Dr. Ridley's May 11, 2005, opinion, his subsequent opinion substantially changes the analysis. There, Dr. Ridley clarified that Buchl's fatigue associated with his rheumatoid arthritis limited him to working two to three hours a day. He also explained that if Buchl worked more, his arthritis would inflame. Thus, Dr. Ridley provided the specificity for his opinion that the ALJ previously found lacking. Accordingly, the ALJ's conclusion that Dr. Ridley's opinion was conclusory is not supported by substantial evidence in the record.

The ALJ also discounted Dr. Ridley's opinion because he considered it inconsistent with Buchl's daily activities. Tr. at 19. The ALJ described these activities as, "childcare duties on a near full-time basis for his grandchildren, ages 2 years and 17 months, hobbies of wood working,

---

[4] This rule also allows the Court to consider evidence considered by the Appeals Council on remand regarding the Commissioner's grant of Buchl's second application for disability benefits, to the extent that information is pertinent to Buchl's first benefits application.

7

and volunteer work." *Id.*  Buchl volunteers as an usher at church once every four weeks.  After ten or fifteen minutes he has to sit down.  *Id.* at 263, 266.  He is also a member of the Lion's Club and sometimes attends dinner meetings and sells tickets for their pancake breakfasts.  *Id.* at 266.  With regard to his woodworking, Buchl testified that he putters in the garage for an hour to ninety minutes, at most, because, "I'm fatigued, and I start making mistakes, and I don't like to make mistakes with power tools.  They don't forgive you."  *Id.* at 262.  Buchl testified that these activities are all done in short intervals and are non-strenuous.  The Court does not, therefore, find substantial evidence in the record that they are inconsistent with Dr. Ridley's opinion.

An examination of Buchl's actual testimony regarding his childcare activities also puts that issue in necessary context.  Buchl's testified that he takes care of only one of his grandchildren at a time.  *Id.* at 258.  He testified that he naps with them twice a day for thirty to forty five minutes.  *Id.* at 267.  He does this childcare three to four days a week, although it is not clear from the record how many hours he watches the children.  *Id.*  Significantly, his childcare duties allow him to take two naps a day, which is consistent with Dr. Ridley's opinion that his fatigue and need for daily rest periods preclude him from full-time work.  Also significant is the fact that his childcare duties are part-time.  The crux of this matter is whether Buchl can work full-time, not part-time.  Thus, his part-time care of his grandchildren does not appear to this Court inconsistent with Dr. Ridley's opinion.

The ALJ also stated that Dr. Ridley's opinion was not supported by objective findings.  Tr. at 19.  The ALJ explained that Buchl's symptoms waxed and waned and "were appropriately treated with adjustments of medication."  *Id.*  While substantial evidence in the record supports the conclusion that Buchl's symptoms intermittently flared and that his medication helped for a time, those observations do not equate to a lack of objective evidence for Dr. Ridley's opinion

8

that Buchl was precluded from full-time work. *See Shontos v. Barnhart*, 328 F.3d 418, 427 (8th Cir. 2003) (treating physician's observation that claimant did better on medication did not negate his opinion that she would have difficulty with detailed instructions). As Dr. Ridley explained in his first opinion, "He is stable medically, but not capable for full-time work." Tr. at 243. He further explained on December 7, 2005, that Buchl's arthritis was only "partially controlled on significant medication plus IV medication and at present he can probably work only 2 to 3 hours per day due to fatigue and active arthritis." *Id.* at 244.

Dr. Ridley is a rheumatologist, and, as such, a specialist in treating Buchl's condition. He had a longstanding relationship with Buchl, dating back to at least 2001 and consisting of fifty visits. The general rule is that a medical opinion emanating from a specialized and longitudinal treating relationship is accorded controlling weight. *See* 20 C.F.R. 404.1527(d). The ALJ's decision to vary from the general rule was not supported by substantial evidence. While Buchl's RA improved for a time with intensive treatment, that fact alone is insufficient to negate his treating physician's opinion regarding his work limitations. *Shontos*, 328 F.3d at 427. This is particularly the case where the overall record shows a gradual worsening of Buchl's condition over time.[5]

Rather than relying on Dr. Ridley, the ALJ improperly placed "significant weight" on the testifying medical expert, Dr. Martinson. Dr. Martinson, a surgeon, not a rheumatologist, gave scant explanation for the RFC limitations he recommended. *See* Tr. at 50; 20 C.F.R. § 404.1527(d)(3) (weight given non-examining sources depends on "the degree to which they provide supporting explanations for their opinions.") He acknowledged that fatigue can be a side

---

[5] Notably, in consultation regarding Buchl's second disability benefits application, a state agency doctor remarked in November 2006 that "there is no significant conflicting evidence in file to contradict Dr. Ridley's opinion. Therefore it is afforded controlling weight." Tr. at 341.

9

effect of rheumatoid arthritis.  Tr. at 270.  He also acknowledged that an X-ray of Buchl's hips showed deterioration in the hip joints.  *Id.* at 268.  He acknowledged that the Buchl's medical records showed synovitis at times, but not at his April 2005 appointment.  *Id.*  He noted that Buchl often had normal range of motion.  *Id.*  From this, he recommended the RFC limitations ultimately adopted by the ALJ.[6]

Significantly, Dr. Martinson did not address Dr. Ridley's opinion that Buchl could not work full-time, and he never had the opportunity to address Dr. Ridley's later opinion further explaining his position.  Dr. Martinson's vaguely drawn conclusions did not constitute substantial evidence upon which to support the ALJ's RFC formulation.  *See* 20 C.F.R. § 404.1527(d)(3), (5); *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000) ("The Commissioner is encouraged to give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.").[7]

In sum, the Court finds that the new evidence submitted to the Appeals Council negates the ALJ's conclusion that Dr. Ridley's opinion was conclusory.  Moreover, the ALJ's conclusion that Buchl's daily activities were inconsistent with Dr. Ridley's opinion is unsupported by substantial evidence in the record.  Finally, the ALJ's decision to weigh the non-examining physician's opinion over that of Dr. Ridley was also erroneous.

### B.     Kneeling, Crouching, Bending, and Crawling

Further error exists in the ALJ's formulation of Buchl's RFC.  The ALJ found that Buchl retained the RFC for "occasional" "kneeling, crouching, crawling, and bending…."  Tr. at 18.

---

[6] As discussed below, the ALJ did not adopt the medical expert's conclusion that Buchl could "seldom" bend, stoop, kneel, crouch or crawl. *Id.* at 269.

[7] The Court notes that Dr. Ridley's later opinion was premised on his belief that Buchl's arthritis would inflame if worked more than part-time. This is consistent with the record. While Buchl's arthritis was better managed for a time after he started taking significant medication, this improved control occurred after he stopped working in 2001.

Buchl testified that he "can't stoop or kneel." Tr. at 264. As he described, he, "[c]an't even genuflect" while serving as an usher at church once a month. *Id.* at 268. The testifying medical expert concurred, stating that Buchl could "seldom" bend, stoop, kneel, crouch, or crawl. *Id.* at 269.

The ALJ's inclusion of "occasional" kneeling, crouching, crawling, and bending in Buchl's RFC, therefore, lacks the necessary support in the record. The Social Security Administration defines "occasional" as occurring "up to 1/3 of the time." *Dictionary of Occupational Titles*, Appendix C, Part IV Physical Demands (defining types of work "in which the strength factor is expressed," i.e. sedentary, light, medium, heavy, very heavy). *See also* 20 C.F.R. § 404.1567 (physical exertion classifications "have the same meaning as they have in the Dictionary of Occupational Titles, published by the Department of Labor"). According to both Buchl and the testifying medical expert, Buchl could not perform a job requiring that he kneel, crouch, bend, and crawl up to 1/3 of the time. "Seldom" and never, do not equal "occasionally." Substantial evidence, therefore, did not support the ALJ's inclusion of an occasional ability to kneel, crouch, bend, and crawl in Buchl's RFC.[8]

   **C.   Side Effects of Buchl's Medicine**

The ALJ found that the side effects of Buchl's medications did not affect his RFC. Specifically, he stated that "his [Buchl's] RA was controlled by Remicade infusions. He noted that he felt ill the following day, but it appeared that his side effects could be controlled by

---

[8] The Court recognizes that, after the ALJ's decision, a state agency doctor concluded that Buchl could occasionally stoop, kneel, crouch, and crawl. Tr. at 332. That doctor, however, failed to explain his conclusions in this regard, even though asked to do so. *Id. See* 20 C.F.R. 404.1527(d)(3) (weight given medical source opinion dependent, in part, on the supporting explanation for that opinion, particularly where medical source is nonexamining). He also ultimately concluded that Buchl was unable to work full-time on a regular basis, supporting the Commissioner's decision to award Buchl disability benefits as of October 2005. *Id.* at 335, 341.

11

scheduling his doses as so avoid disruption to his regular functioning." Tr. at 18. Two errors are evident in the ALJ's analysis of the side effects of Buchl's arthritis medication.

First, while Buchl took Remicade, he did so every five or six weeks, and no side effects of this medication appear in the record. Buchl also received a weekly intramuscular injection of Methotrexate. *E.g.*, *id.* at 182. It was the Methotrexate, not the Remicade cited by the ALJ, that caused Buchl to experience flu-like symptoms. *Id.* at 257. Notably, Buchl received the Methotrexate every week, not every five to six weeks like the Remicade. Thus, it is unclear whether the ALJ understood that the side effects of the Methotrexate occur every week, versus every five to six weeks.

Second, the ALJ's conclusion that Buchl can control the side effects of the Methotrexate by simply scheduling his doses is not entirely correct. Buchl testified that he experiences a "touch of the flu for about 16 to 18 hours after I have it." Tr. at 257. At the benefits hearing, Buchl's attorney explained that Buchl is injected with the Methotrexate at night, so that he only has one day where he is sick. Tr. at 252. Thus, while the nighttime administration of the drug helps limit his side effects to one day, it does not "avoid disruption to his regular function" altogether, as the ALJ concluded.[9] Accordingly, the ALJ's basis for excluding Buchl's weekly side effects from the Methotrexate from his RFC does not find substantial support in the record.[10]

---

[9] Whether Buchl could take the Methotrexate so that the side effects occurred primarily during non-work days was not explored at the hearing.

[10] The Court is also concerned regarding the ALJ's determination that Buchl could perform his past relevant work as a sales representative. Buchl was not a sales representative. He was a project manager for a commercial lighting company. His testified that his job duties included sales duties, as well as managing crews at installation sights. This on-site work sometimes required lifting well in excess of the ALJ's 20 pound RFC. Tr. at 89, 275 (Buchl frequently lifted over 25 pounds, and the heaviest weight he lifted was over 100 pounds). While the vocational expert tried to compartmentalize Buchl's job into two different types of work, sales representative and contractor, the Court questions whether this appropriately characterized Buchl's past relevant work. 20 C.F.R. 404.1560(b)(1) ("Past relevant work" is defined, in part,

12

### D. Remand

The Court may recommend an immediate finding of disability only where the record "overwhelmingly supports" such a finding. *Buckner v. Apfel*, 213 F.3d 1006, 1011 (8th Cir. 2000). Otherwise, where a denial of benefits was improper, the Court remands the case to the Commissioner for further administrative proceedings "out of our abundant deference to the ALJ." *Id.* (internal quotation and citation omitted). Here, the ALJ did not have the opportunity to consider Dr. Ridley's second opinion, nor did he accurately formulate Buchl's RFC. The Court, therefore, recommends remand for completion of those tasks and reconsideration of step 4, and if necessary, step 5, of the disability evaluation process.

## III. CONCLUSION

Substantial evidence does not support the ALJ's formulation of Buchl's RFC. Dr. Ridley explained the reasoning underlying his opinion that Buchl could not work full-time in his December 2007 letter. The ALJ's characterization of Buchl's daily activities as inconsistent with Dr. Ridley's opinion is not substantially evidenced in the record. Nor does Buchl's improvement with medication, negate the treating doctor's opinion that he could not work full-time and that such work would inflame his condition. The ALJ's conclusion that Buchl could kneel, crouch, crawl, and bend up to one-third of the time contradicted Buchl's testimony, and that of the testifying medical expert. Finally, the ALJ's conclusions regarding the side effects of Buchl's Methotrexate contradict the record. Remand to the ALJ is recommended for appropriate formulation of Buchl's RFC.

---

as "work that you have done within the past 15 years…."). However, given the other errors identified above necessitating remand, the Court need not resolve this question.

**IV. RECOMMENDATION**

Being duly advised of all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

    A.    Plaintiff's amended motion for summary judgment (Doc. No. 30) be **DENIED** in that he sought only an award of disability benefits.

    B.    Defendant's motion for summary judgment (Doc. No. 32) be **DENIED**.

    C.    This case be **REMANDED** to the Commissioner for further proceedings consistent with this Report and Recommendation.

    D.    Judgment be entered in accordance with the holding in *Shalala v. Schaefer*, 509 U.S. 292 (1993).

Dated: July 28, 2008.

                                            s/ *Jeanne J. Graham*
                                            JEANNE J. GRAHAM
                                            United States Magistrate Judge

**NOTICE**

Pursuant to Local Rule 72.2(b), any party may object to this report and recommendation by filing and serving specific, written objections by **August 12, 2008**. A party may respond to the objections within ten days after service thereof. Any objections or responses filed under this rule shall not exceed 3,500 words. The district court judge shall make a de novo determination of those portions to which objection is made. Failure to comply with this procedure shall forfeit review in the United States Court of Appeals for the Eighth Circuit. Unless the parties are prepared to stipulate that the district court judge is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this report and recommendation, the party making the objections shall timely order and cause to be filed within ten days a complete transcript of the hearing.